

**MEISTER SEELIG & FEIN LLP**

ATTORNEYS AT LAW
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone (212) 655-3500
Facsimile (212) 655-3535
www.meisterseelig.com

Stephen B. Meister
Partner
Direct (212) 655-3551
Fax (646) 539-3651
sbm@msf-law.com

June 26, 2015

**Via ECF and Federal Express**

The Honorable United States Bankruptcy Judge Martin Glenn
United States Bankruptcy Court, Southern District of New York
One Bowling Green, Courtroom 501
New York, New York 10004-1408

Re:   *Dewey & LeBoeuf Secured Lender Trust v. LCN Capital LLC et. al. (14-02054)*

Dear Judge Glenn:

This firm represents the defendants in the above-referenced adversary proceeding ("Defendants"). We write pursuant to Local Rule of Bankruptcy Procedure 7056-1 and the Case Management & Scheduling Order (ECF Doc. Nos. 10 and 16) to request a pre-motion conference in anticipation of a motion for summary judgment to dismiss the complaint in its entirety.

In this action, the Liquidating Trustee of the Dewey & LeBoeuf Secured Lender Trust ("Plaintiff") seeks to recoup purported legal fees in the sum of $768,981.10. Plaintiff claims the sum is due for legal services allegedly provided by Dewey & LeBoeuf LLP ("D&L") to Defendants for various matters between July 12, 2010 and May 15, 2012.

The undisputed facts are as follows. D&L never entered into an engagement agreement with any of Defendants. Moreover, though Plaintiff alleges the services commenced in July 2010 – some twenty-two months before D&L filed its petition for bankruptcy relief in this Court - D&L never once issued a prepetition invoice to any of Defendants for any of the purported services. In fact, the only "invoice" ever created was generated post-petition in the fall of 2012 by the D&L estate's collections consultants, On-Site Associates, LLC ("On-Site") for the "lump sum" of $768,981.10 for services allegedly rendered from 2010 through 2012. The principal of On-Site, George Abodeely conceded that not only did On-Site not share the invoice with the D&L relationship partner in charge of the matter, Joseph Smith, Esq., but in fact On-Site disregarded Mr. Smith's directions regarding the financial arrangement between D&L and Defendants. In fact, the "invoice" generated by On-Site was a data dump, which consisted of inappropriately billed time falling into three categories: (1) incomplete real estate private equity fund formation work for Defendant LCN Capital Partners ("LCN"); (2) an unrelated litigation matter in which Edward LaPuma (a principal of LCN) was a defendant (the "LaPuma Litigation"); and (3) preparatory work for future real estate transactions if and when LCN launched a private equity fund as well as educational work performed by D&L lawyers for their own benefit. None of the work is properly chargeable to Defendants.

Discovery has confirmed that the fund formation work D&L began to perform would only be billable to LCN upon the occurrence of certain conditions, including (a) D&L completing the fund



*Honorable Martin Glenn*
*Page 2*
*June 26, 2015*

formation work; (b) LCN launching a fund; (c) LCN having sufficient funds remaining within the $500,000 organizational cost cap it negotiated with its investors; and (d) D&L would be compensated in the form of future work forming LCN's successor funds and the real estate transactional work LCN's funds would generate. D&L never completed the fund formation work, and instead LCN had to retain Schulte Roth & Zabel LLP to perform the fund formation work. By the time LCN finally launched its fund in 2013, LCN had incurred well more than $1,000,000 in organizational costs, such that in no event does LCN owe any fees to D&L. In addition, as Mr. Smith confirmed during his deposition, D&L agreed to represent Mr. LaPuma and his wife in the LaPuma Litigation free of charge as an accommodation. Moreover, as Mr. Smith also confirmed, the preparatory and educational work by D&L lawyers for their own benefit was inappropriate and never properly billable to Defendants.

Plaintiff's claim for breach of contract fails because under New York law a lawyer cannot recover a legal fee where the lawyer fails to enter into a written engagement letter with the client. *See* 22 NYCRR 1215.1. Moreover, Plaintiff cannot recover under quasi-contractual theories such as unjust enrichment, quantum meruit, or breach of an implied contract. In short, Defendants were not enriched because D&L breached its obligations to its clients and never completed the work, much of which had to be redone and completed by new firms at great cost. Moreover, because D&L through Mr. Smith agreed that D&L would not charge Defendants for the services, Plaintiff cannot establish either a reasonable expectation of payment or that equity and good conscience require the payment of a fee to D&L. *See, e.g., Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110 (2011) (a claim for unjust enrichment requires proof "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered"); *see also Fulbright & Jaworski, LLP v. Carucci*, 63 A.D.3d 487, 489, 881 N.Y.S.2d 56 (1st Dep't 2009) (a cause of action for quantum meruit requires proof of "(1) the performance of services in good faith, (2) the acceptance of services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services"). Furthermore, Plaintiff cannot prevail on its account stated claim because no invoices were delivered to Defendants in the ordinary course of business and Defendants promptly objected to the bogus invoice delivered by On-Site after the petition date. It follows that because Plaintiff has no state law claims against Defendants, Plaintiff has no claims under either 11 U.S.C. § 541 for a declaration or 11 U.S.C. § 542 for a turnover order.

In sum, Defendants never became obligated to pay D&L for services, and D&L was unable to complete the work for Defendants and it was ultimately completed at other firms. The Court should reject Plaintiff's meritless claims against Defendants, which are an attempted end run around the New York Court of Appeals' rejection of the unfinished business doctrine in *Geron v. Seyfarth Shaw LLP*, 24 N.Y.3d 16, 20 N.E.3d 264 (2014).

Nothing herein is intended to waive or otherwise diminish Defendants' rights and remedies, including the right to a final adjudication in the District Court and the right to a jury trial, all of which are hereby expressly reserved.

Very truly yours,

Stephen B. Meister

cc:     John Jureller, Esq. (counsel to Plaintiff)

[6341-001/4654817/1]